Leslie NAGHIU and Laverne
Naghiu, Plaintiffs,

v.

INTER–CONTINENTAL HOTELS
GROUP, INC., trading as, Hotel Inter–
Continental Kinshasa, and Hotel Inter–
Continental Kinshasa, Defendants.

Civil A. No. 94–437 MMS.

United States District Court,
D. Delaware.

Feb. 23, 1996.

Robert C. McDonald and Barbara J. Gadbois of Borin & McDonald, Wilmington, Delaware, for plaintiffs.

Vincent A. Bifferato, Jr., of Herrmann & Bifferato, Wilmington, Delaware (of counsel: Robert B. Wallace), and Gerald F. Ivey, of Wilson, Elser, Moskowitz, Edelman and Dicker, Washington, D.C., for defendants.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

### I. INTRODUCTION

Plaintiffs Leslie and Laverne Naghiu, citizens of Virginia, have filed suit in this diversity action against the Inter–Continental Hotels Group, Inc. ("Inter–Continental" or "defendant"), a Delaware corporation. Plaintiffs aver that during Leslie Naghiu's ("Naghiu" or "plaintiff") stay as a guest of defendant's hotel in Zaire, Africa in March, 1993, he was attacked in his room, causing him to suffer personal bodily injury and a loss of $146,000 in property. Laverne Naghiu claims a loss of consortium flowing from her husband's injuries.

Inter–Continental has moved for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that plaintiff is not the real party in interest in this case as to the loss of personal property. D.I. 27. In addition, Inter–Continental has moved for summary judgment under Rule 56 on the issue of whether it is liable in tort for the events that allegedly occurred on its premises. *Id.*

Jurisdiction is invoked pursuant to 28 U.S.C. § 1332. For the reasons stated below, the Court will grant defendant's motions as to both issues.

### II. FACTUAL BACKGROUND

The Court views the facts in this case, which are rich with intrigue, in the light most favorable to the plaintiffs. Naghiu, an employee of the Christian Broadcast Network, Inc. ("CBN"), serves as the director of executive protection for Dr. Pat Robertson ("Robertson").[1] Deposition of Leslie Naghiu, D.I. 31 at 10. In this capacity, Naghiu coordinates security arrangements for Robertson

on his trips abroad. *Id.* Naghiu is an employee of CBN but is not an officer or director of CBN; he has no ownership or voting control in the affairs of CBN. *Id.* at 24–25. Naghiu's employment with CBN is based out of Virginia Beach, Virginia. *Id.* at 104.

In March 1993, on behalf of Robertson, Naghiu traveled to Zaire to purchase diamonds and render humanitarian aid. *Id.* at 86–87. To that end, Naghiu estimates that he carried on his person approximately $100,-000 in cash, kept in an attaché case. *Id.* at 77, 86. He describes the "street" environment in Zaire as follows:

> There is very little street crime in Zaire. The crime in Zaire is perpetrated nine out of ten times by the military. But that doesn't keep CBN away from performing the humanitarian tasks and the businesses that [Robertson] is there for. As CBN likes to put it, if you don't like the heat in the kitchen you can leave.

*Id.* at 45. Naghiu further delineated the risks of travel abroad to Zaire:

> [I]t is a risk to anyone who is involved in the international arena from the standpoint of a security person. We are not talking about a security guard at the K-Mart. We are talking about someone that works the international arena and knows what the circumstances and consequences can be in a volatile continent. I am not trying to earmark Zaire. I happen to enjoy working in Zaire. What I am saying is that the continent itself, today there are 23 countries in that continent that are under military strife.

*Id.* at 46–47. From 1992–93, Naghiu traveled numerous times to Zaire on behalf of CBN. *Id.* at 42–43. Out of concern for Robertson's safety and welfare, Naghiu twice recommended that Robertson not personally travel to Zaire when Naghiu perceived conditions as too dangerous. *Id.* at 136. Robertson followed Naghiu's advice on those occasions. *Id.*

As of the March, 1993 CBN expedition to Zaire, Robertson's corporation had rendered

---

**1.** Dr. Robertson is an internationally-known televangelist, humanitarian, and former United States presidential candidate. 2 *Who's Who in America* 2897 (1994).

approximately two million dollars in humanitarian aid to that country. *Id.* at 164. With this legacy of prior aid, CBN's March, 1993 return to Zaire was covered by the Zaire media, including television. *Id.* at 165. During all of this, Naghiu was charged with the security of the attaché case containing the money. The Robertson entourage booked its stay at defendant's Inter-Continental Hotel Kinshasa ("hotel"), the only suitable lodging for business travelers in Kinshasa, Zaire. *Id.* at 48. Inter-Continental admits that it routinely advised all paying guests to give their valuables, including cash, to the hotel staff for safe-keeping. D.I. 4, ¶ 6.

Upon arrival at the Inter-Continental Kinshasa, Naghiu asked the night personnel to procure a safe deposit box for the cash. D.I. 31 at 126. The night clerk told Naghiu there were no accessible boxes available until the following morning. *Id.* at 138. From his vantage point at the registration desk, Naghiu could see the boxes and perceived them to be in a state of "disarray." *Id.* at 131.

Naghiu claims that the following morning he again approached Inter-Continental's front desk clerk and requested a safe deposit box, but was told to "come back later." *Id.* at 143. Naghiu retained the attaché case containing the cash. *Id.* at 145. A short time later in his stay, Naghiu complained to the hotel's General Manager that there were prostitutes roaming the hotel's elevators and corridors soliciting business from the hotel's guests. *Id.* at 146–48. Although he had the opportunity, Naghiu did not mention to the General Manager about his inability to obtain a safe deposit box for his valuables. *Id.* at 145. At some point during the CBN trip, $46,000 was added to the attaché as proceeds of a diamond transaction. *Id.* at 106.

On the evening of March 23, 1993, Naghiu supped at a private residence that was "... 45 minutes outside of Kinshasa in an area where soldiers and military types have stopped vehicles, accosted foreigners and even Zaireans, manhandled them. Shot them." *Id.* at 173. Consequently, as Naghiu has testified, he left the attaché case and its contents in his hotel room while he left the premises. *Id.* at 175. He did not consider making another effort at obtaining a hotel safe deposit box. *Id.* Naghiu hid the at-

taché case behind a couch and set of heavy drapes in his hotel room on the 19th floor. *Id.* at 175–76.

According to Naghiu, he returned from dinner to his hotel door and used his key to enter his room. *Id.* at 177. He remembers now that the door appeared to have been unlocked, although it did not strike him at the time as out of the ordinary. *Id.* Upon gaining entry, he attempted to turn on the overhead light, without success. *Id.* Naghiu finally located a floor lamp that lit and then immediately witnessed a man going through his large suitcase, strewing clothing on the floor. *Id.* at 179. Naghiu yelled at the man, who brandished a "long, very thin bladed Belgian sabre" and lunged at Naghiu. *Id.* at 180. The man missed Naghiu and instead impaled the hotel room wall, leaving "a tremendous indentation." *Id.* Naghiu then claims the man assaulted him with the knife, cutting him above the ear on the left side of his head and on the right forearm. *Id.* at 182–83. Naghiu says he fought his assailant when another man approached from the bathroom; that is the last thing Naghiu remembers before being knocked unconscious. *Id.* at 185.

Naghiu's companions found him unconscious in his room and brought him to another site for medical attention. Inter-Continental refused to allow Naghiu's fellow security officer into the room to perform an immediate investigation. *Id.* at 191. According to plaintiff, within 24 hours of the attack, the holes in the wall made by the attacker's knife were filled in, the room had been painted and the carpet had been replaced. *Id.* at 110–11, 191. Naghiu subsequently filed criminal charges with the Zairean authorities. *Id.* at 255. When he returned stateside, Naghiu claims that Robertson expected reimbursement of the stolen money. *Id.* at 109. Robertson later told Naghiu, however, not "to worry about [the money], that [Naghiu] was bonded." *Id.* at 262.

## III. DISCUSSION

### A. Motion To Dismiss under Rule 12(b)(6)

 Inter-Continental has filed a Rule 12(b)(6) motion to dismiss plaintiff's claim for

recovery of the $146,000 for failure to state a claim upon which relief can be granted. When making a determination under this rule, the Court looks only to the complaint and cannot consider matters outside the pleadings. *Kulwicki v. Dawson,* 969 F.2d 1454, 1462 (3d Cir.1992). In support of its motion, however, defendant relied on exhibits and plaintiff's deposition testimony in addition to the complaint. *See* (Amended) Opening Brief, D.I. 35, at 8, 13. In his answering brief as to this issue, plaintiff relied extensively on his deposition testimony as well. *See* Answering Brief, D.I. 32 at 5, 8.

Under Rule 12(b), if the Court decides to dispose of the motion to dismiss as provided in Rule 56, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). The instant motion to dismiss was accompanied by a motion for summary judgment; each side consolidated its briefing on the separate motions into a single memorandum of law. Although defendant styled its case-dispositive motion on plaintiff's alleged loss of personal property as a 12(b)(6) motion, neither side felt constrained to confine its analysis or evidence to the complaint alone. In their briefing, the parties presented the same type of evidence in support of their positions for both the motion to dismiss and the summary judgment motion.

■ When both parties present extraneous materials as part of a Rule 12(b)(6) motion or in opposition thereto, the Court has discretion to accept the extraneous material and convert the motion to one for summary judgment pursuant to Fed.R.Civ.P. 56. *Kulwicki,* 969 F.2d at 1462 (citations omitted); 5A Wright & Miller, *Federal Practice and Procedure* § 1366 (2d ed. 1990). Because the Court has accepted the type of evidence usually considered under Rule 56(c) for summary judgment, the Court will convert defendant's motion to dismiss into a motion for summary judgment.

## B. Summary Judgment Standard

■ Under the Federal Rules of Civil Procedure, the Court shall grant a motion for summary judgment if it determines "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Material facts" are those which, under applicable substantive law, might affect the outcome of the case. *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir.1994) (citations omitted).

■ The moving party has the initial burden of demonstrating that it should prevail under Rule 56(c), *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), which can be accomplished by simply pointing out to the Court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *see also Peters Township Sch. Dist. v. Hartford Accident & Indem. Co.,* 833 F.2d 32, 34 (3d Cir.1987).

■ In opposition, the nonmoving party must come forward with evidence supporting a claim that there is a genuine issue of material fact in dispute which requires resolution by the trier of fact. *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). Where the nonmovant has the burden of proof at trial on an issue for which summary judgment is sought, the nonmovant must make an evidentiary showing sufficient to establish the existence of the essential elements of his case to survive the summary judgment motion. *Celotex Corp. v. Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. This evidence is to be considered as true, and all reasonable doubts and inferences must be resolved in the nonmoving party's favor. *Anderson v. Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513–14. "The nonmovant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt." *Valhal Corp. v. Sullivan Assoc., Inc.,* 44 F.3d 195, 200 (3d Cir.1995)

(quoting *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977)). In drawing these inferences, the Court may not make credibility determinations or weigh evidence. *Petruzzi's IGA Supermarkets v. Darling–Delaware*, 998 F.2d 1224, 1230 (3d Cir.), *cert. denied*, ––– U.S. –––, 114 S.Ct. 554, 126 L.Ed.2d 455 (1993).

However, if the nonmovant's evidence is "merely colorable," or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2511. For example, the nonmovant may not successfully resist summary judgment by simply replacing unsworn conclusory allegations in his complaint with sworn conclusory allegations of Rule 56(c) type evidence. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990) ("the object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Rather, the nonmovant must offer specific facts contradicting the facts averred by the movant that indicate that there is a genuine factual issue for trial. *Id.* at 886–88, 110 S.Ct. at 3187–88; *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

## C. Real Party in Interest–Loss of Personal Property

Defendants first argue that plaintiff may not recover for the alleged loss of the $146,000 because plaintiff is not the real party in interest as required by the Federal Rules of Civil Procedure. Fed.R.Civ.P. 17(a) requires that "[e]very action shall be prosecuted in the name of the real party in interest." Unless a party is "[a]n executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute," a litigant cannot sue in his "own name without joining the party for whose benefit the action is brought." Fed.R.Civ.P. 17(a). The underlying aim of the rule is to ensure

fairness to the defendant by protecting the defendant against a subsequent action by the party actually entitled to relief, and by ensuring that the judgment will have proper *res judicata* effect. *ICON Group, Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473, 478 (3d Cir.1987); *Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 84 (4th Cir.1973), *cert. denied*, 415 U.S. 935, 94 S.Ct. 1450, 39 L.Ed.2d 493 (1974).

### Choice of Law

Naghiu argues that he was a bailee of the money and as such, is a real party in interest as explicitly enumerated by Fed. R.Civ.P. 17. In analyzing plaintiff's status as bailee *vel non*, the Court looks to the substantive law creating the right being sued upon to ascertain whether plaintiff possesses a substantive right to relief. *Gee v. CBS, Inc.*, 471 F.Supp. 600, 617 (E.D.Pa.), (quoting 6A Wright & Miller at § 1544), *aff'd without op.*, 612 F.2d 572 (3d Cir.1979); *Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 43 (6th Cir. 1994); *Whelan v. Abell*, 953 F.2d 663, 672 (D.C.Cir.), *cert. denied*, 506 U.S. 906, 113 S.Ct. 300, 121 L.Ed.2d 223 (1992). As a threshold matter, the Court must decide which jurisdiction's law controls the issue of whether plaintiff is to be considered a bailee of the $146,000.

Where, as here, the jurisdiction of a federal court is founded upon the diversity statute, 28 U.S.C. § 1332, the Court applies the substantive law, including the choice of law provisions of the state in which the federal court sits. *Carrick v. Zurich–Am. Ins. Group*, 14 F.3d 907, 909 (3d Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941)). This Court therefore will look to Delaware choice of law rules to determine the substantive law that governs the dispute between Naghiu and Inter–Continental.

For choice of law questions sounding in contract,[2] Delaware courts follow

2. Delaware courts have determined that a bailment arrangement is by nature a contractual relation. *See Sports Complex, Inc. v. Golt*, 647 A.2d 382, 1994 WL 267697 (Del.1994) (Table–

the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws. *Travelers Indem. Co. v. Lake,* 594 A.2d 38, 41 (Del.1991) (citing *Oliver B. Cannon & Son, Inc. v. Dorr-Oliver, Inc.,* 394 A.2d 1160, 1166 (Del.1978)). Under Restatement section 188, the rights and duties of the parties with respect to an issue in contract are determined by the local law of the state with the most significant relationship to the transaction and the parties by reference to the following principles: a) the place of contracting, b) the place of negotiation of the contract, c) the place of performance, d) the location of the subject matter of the contract, and e) the domicile, residence, or place of incorporation and place of business of the parties. Restatement (Second) of Conflicts § 188 (1971). Considering plaintiff as a putative bailee of CBN based in Virginia, the Court finds that factors a, b, c, d and part of e of the Restatement approach point to Virginia. Accordingly, the Court holds that Virginia has the most significant relationship to the occurrence and the parties with respect to whether plaintiff was a bailee of the cash and thus satisfies Rule 17's real party in interest requirement. Thus, Virginia law shall control as to whether plaintiff was in fact a bailee.

■ The Supreme Court of Virginia has ruled that "[a] bailment has been broadly defined as 'the rightful possession of goods by one who is not the owner.'" *K-B Corp. v. Gallagher,* 218 Va. 381, 237 S.E.2d 183, 185 (1977) (quoting 9 S. Williston, *Contracts* § 875 (3d ed. 1967)). In addition, to be considered a bailee, one must have both physical control of the goods and an intent to exercise that control. *K-B Corp.,* 237 S.E.2d at 185 (citation omitted).

■ Although there may be superficial similarity, a master and servant (or employer and employee) do not stand in the relationship of a bailor and bailee to one another. 8 Am.Jur.2d *Bailments* § 30 (1980). Unlike the employer's relationship with his employee, the bailor has no control over the bailee. *Id.* The bailment relation is concerned only with personal property, and the bailee is not subject to direction in carrying out the purposes of the bailment, except as the bailment contract provides, but occupies rather the position of an independent contractor. *Id.* On the other hand, employment imports control and direction of the employee's acts within the scope of the employment relationship. *Id.* "[W]here an owner of a chattel delivers it to another to perform work in respect to or by means of it, the relationship of the parties is that of bailor and bailee where the owner parts with control over it and is that of master and servant where he retains control thereof." *Payne v. Kinder,* 147 W.Va. 352, 127 S.E.2d 726 (1962), citing *id.; accord* 2C *Michie's Jurisprudence of Virginia and West Virginia* § 4 at 134, n. 20 (1992).

■ As an employee of CBN, Naghiu was charged with safekeeping the cash as a duty of his master-servant relationship. In reality, Naghiu had only custodial possession of the money; others in the CBN party exercised control over how the money or diamonds were to be transacted. *See, e.g.,* D.I. 31 at 245. Thus, contrary to plaintiff's assertions, he could not be considered a bailee to satisfy Rule 17's real party in interest requirement. In sum, Naghiu has not demonstrated any legal interest in the cash allegedly stolen from his hotel room on March 23, 1993. He has testified under oath that he has no ownership interest in the money, and has no written authorization to seek its recovery. *Id.* at 115. In addition, he has never claimed to be suing on Pat Robertson's or anyone else's behalf.[3] Thus, as to defen-

Unpublished Disposition) ("a bailment exists where there is a delivery of personalty for some particular purpose ... upon a contract....") (n.b. Unpublished orders of the Supreme Court of Delaware have precedential effect in Delaware. See Del.Sup.Ct.R. 17(a) Commentary; *New Castle County v. Goodman,* 461 A.2d 1012, 1013 (Del.1983)).

**3.** Although the Court accepts Naghiu's allegations as true, it is noteworthy that Inter-Continental has twice requested, without success, discovery of documentation showing receipt and rightful possession of the money plaintiff claims to have had lost. Aside from his verbal assertions, plaintiff has produced no tangible evidence that the money even existed. Despite repeated requests from defendant, plaintiff has not been able to produce evidence that the $146,000 was

dant's liability for the stolen cash, plaintiff has proffered no theory supporting his status as a real party in interest to this action.

Rule 17(a) also provides that

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest....

A proper ratification under to Rule 17(a) requires the ratifying party to: 1) authorize continuation of the action; and 2) agree to be bound by the lawsuit's result. *ICON Group v. Mahogany Run,* 829 F.2d at 478. Assuming arguendo that Pat Robertson or CBN would be the real party in interest to recover the cash in this action, there is no evidence that either have authorized continuation of this action and have agreed to be bound by the result in this suit. The evidentiary record contains a September, 1995 letter discussing Naghiu's plight sent by Zairean "Counsellors at Law" to Pat Robertson at his corporate address in Virginia Beach, Va.D.I. 45. From this the Court necessarily concludes that Robertson had notice of this action as of that date that Naghiu had initiated suit for return of Robertson's (or his corporation's) money. In addition, defendant first objected to Naghiu's lack of status as a real party in interest as to the stolen cash well over a year ago. D.I. 4. Consequently, the Court holds that plaintiff has had reasonable opportunity to locate and formally join, substitute, or seek ratification from Robertson or CBN, the real parties in interest. Because this has not occurred, the Court holds that Rule 17's real party in interest requirement has not been satisfied as to the loss of personal property in this case. As to this first issue, the Court will grant summary judgment in favor of defendant.

### D. Naghiu's Personal Injuries—Premises Liability

The Court sitting in diversity must also determine what substantive law governs the tort claims in this case. Again, the Court first looks to the forum state's choice of law rules for guidance. *Carrick v. Zurich–Am.,* 14 F.3d at 909. Similar to its approach for analyzing choice of law questions for contract issues, Delaware adheres to the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws for tort issues. *Travelers Indem. Co. v. Lake,* 594 A.2d at 47. Under section 145 of the Restatement, the local law of the state which "has the most significant relationship to the occurrence and the parties under the principles stated in section 6" will govern the rights and liabilities of the parties in a tort action. *Id.* (quoting Restatement (Second) of Conflict of Laws § 145(1) (1971)). Section six delineates the following considerations:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability, and uniformity of result,

(g) ease in the determination and application of the law to be applied.

*Id.* at § 6. Section 145 speaks directly to the relevant contacts the Court must consider when applying section six:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Id.* at § 145. If the tort case involves personal injury, as this one does, the Court is directed by Restatement section 146 "to apply the law of the state where the injury occurred in a 'personal injury case' unless the forum state has a 'more significant relationship' under section Six principles to the 'oc-

---

declared as required by 31 U.S.C. § 5316 (transport of money in excess of $10,000 in or out of the United States must be declared) and the

United States Customs Service. *See* D.I. 31 at 273–76; D.I. 29 at 31, 44–45.

currence and the parties.'" *Travelers Indem. Co. v. Lake*, 594 A.2d at 47.

■ With these principles in mind, the Court concludes that the Supreme Court of Delaware would apply Zairean law to Naghiu's claims for personal injury against Inter–Continental. As the forum wherein his alleged personal injury occurred, under section 146, Zaire has the most significant relationship to the occurrence and to the issues raised by Naghiu. Zaire is also at the heart of the parties' relationship to one another, as the Inter–Continental Hotel Kinshasa is located in that forum and it is the hotel's conduct that is at issue in this case. Thus, the majority of the Restatement factors point to Zairean law as the source of the substantive rule of decision in this case.[4]

### 1. The Zairean Civil Code

■ Under the Federal Rules of Civil Procedure, "[t]he court, in determining foreign law, may consider any relevant material or source." Fed.R.Civ.P. 44.1. Here, the Court accepts the parties' proffer of opinion letters expounding Zairean law authored by individuals with expertise in the relevant provisions of the Zairean Civil Code. *See Id.* Advisory Committee Note (the Court may rely on presentation by counsel in applying foreign law). Each side has argued for application of the same provisions of Zairean law.

■ Zaire Civil Code Articles 258 and 259 speak to general tort liability of those who commit injury to others:

> Article 258. Any act of a man which causes damages to another obliges him by whose fault it occurred to make reparation.

> Article 259. Each person is liable for the damages he causes not only by his act but by his negligence or imprudence.

D.I. 37 at 4; D.I. 45.[5] Citing these provisions, defendant argues that if any reparations are due plaintiff, they are owed by his assailants. However, in direct contrast to defendant's argument, its Zairean attorney "expert" opined in his letter that these provisions of Zairean code allow Naghiu, as a hotel guest who has sustained injury, to file suit against the hotel for negligence. D.I. 37 at 4. One of plaintiff's opinion letters also paraphrased Zairean Civil Code Article 19 as "provid[ing] that no persons foreign to the hotel can get access to the premises and rooms assigned to the guests except if they were duly authorized by the innkeeper or his agent." D.I. 42.

Naghiu argues that Inter–Continental failed to take the necessary measures in order to maintain the premises free from hazards and dangerous conditions and was thus negligent in allowing the criminals to victimize plaintiff. Although the Court accepts the general principle that under Zairean law, Inter–Continental *could be* liable under a negligence theory, neither party has supplied the Court with the necessary provisions of Zairean law for the Court to make an informed decision. For example, the Court is uninformed as to the standard of care to which the Inter–Continental hotel is held under circumstances such as these, and whether defendant is held to be an absolute insurer of its guests' safety. Defendant has argued that the "incident involving Naghiu was the first and only incident of a burglary or as-

---

**4.** The Supreme Court of Delaware has held that different choice of law rules under the Restatement (Second) of Conflicts apply to different causes of action, differentiating between actions in contract and tort. *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 41, 47 (Del.1991). Because the choice of law analysis is issue-specific, this Court's determination that Virginia law controlled the bailment issue is considered separately from the question of what law controls the negligence issue in this case. This process of applying the rules of different states to discrete issues within the same case is known as "dépeçage." *See Broome v. Antlers' Hunting Club*, 595 F.2d 921, 923 and n. 5 (3d Cir.1979); *Chemetron Investments v. Fidelity α Casualty Co.*, 886 F.Supp. 1194, 1199 (W.D.Pa.1994) (collecting cases); *see also* Reese, *Depecage: A Common Phenomenon in Choice of Law*, 73 Colum.L.Rev.

58, 75 (1973). Following the lead of the *Travelers Indem. Co.* court, lower Delaware courts have tacitly embraced the dépeçage doctrine. *See Sequa Corp. v. Aetna Casualty and Surety Co.*, 1992 WL 147994 *2 (Del.Super.Ct. May 21, 1992); *International Business Mach. Corp. v. Comdisco, Inc.*, 1991 WL 269965 *29–30 (Del.Super.Ct. Dec. 4, 1991).

**5.** The parties also set forth Articles 515 and 516 of the Zairean Civil Code relating to innkeeper liability for theft or damage to a guest's possessions. As the Court has already ruled that plaintiff is not the real party in interest to bring an action for the loss of the personalty in this case, the Court finds these provisions irrelevant to the remaining tort issue in the case.

sault" on record. D.I. 50 at 8. However, the Court does not know whether the lack of prior notice of such attacks to the hotel is significant under Zairean law.

The Court recognizes that the Zairean Civil Code may not explicitly address every aspect of innkeeper liability. In that instance, Article 1 of the Zairean Code directs that where the Zairean law is silent, other sources of law may be considered, especially provisions of French or Belgian law. 6A *Modern Systems Legal Encyclopedia* § 1.4(C)(2) (1990); *accord,* D.I. 45. However, the parties have not supplied the Court with any Belgian or French law to fill in the analytical chasm left gaping in this case.

Fed.R.Civ.P. 44.1 does not address the effect of the parties' failure to supply foreign law. When such a failure has occurred, "the party who has the affirmative on an issue of foreign law loses if he fails to prove that law." 9 Wright & Miller at § 2447 (collecting cases). To avoid this harsh result, other courts, including the Court of Appeals for the Third Circuit, have looked to their own forum's substantive law to fill in any gaps. *See Walter v. Netherlands Mead N.V.,* 514 F.2d 1130, 1137 n. 4 (3d Cir.), *cert. denied,* 423 U.S. 869, 96 S.Ct. 133, 46 L.Ed.2d 99 (1975); *Banco de Credito Indus. v. Tesoreria Gen.,* 990 F.2d 827, 836 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 877, 127 L.Ed.2d 73; *Riffe v. Magushi,* 859 F.Supp. 220, 223 (S.D.W.Va.1994). The Court will therefore look to Delaware tort law.

### 2. Delaware law

■■■■ The rule in Delaware, similar to the analogous Zairean Civil Code provision, is that a proprietor of a public place, such as a hotel, may be subject to liability to its invitee for the harm sustained while the invitee is on the land within the scope of his invitation. *DiOssi Maroney,* 548 A.2d 1361, 1366 (Del.1988) (quoting Restatement (Second) of Torts § 332 comment e (1965)). However, such a proprietor is not an insurer against all personal injuries inflicted on its premises. *Jardel Co. v. Hughes,* 523 A.2d 518, 525 (Del.1987) (citing Restatement (Sec-

ond) of Torts § 344 (1965)). Possessors of land are under a "residual obligation of reasonable care to protect business invitees from the acts of third persons." *Id.* If prior incidents of criminal conduct have occurred on the premises, Delaware courts have held a proprietor to a duty to foresee specific criminal conduct and take reasonable measures for security protection. *Id.* Mindful of these standards, and viewing the facts in the light most favorable to the plaintiff, the Court turns to the evidentiary record in this case.

■■■■ Plaintiff's briefing on the tort issue in this case consisted of a factual narrative similar to that outlined above and a reiteration of the conclusory allegations of negligence contained in his complaint. *See* D.I. 32 at 4–8, 12–13. At the summary judgment stage, Naghiu's burden is to make a showing sufficient to establish the existence of the essential elements of negligence on the part of Inter–Continental: duty, breach of that duty, and injury proximately caused by the breach. *Naidu v. Laird,* 539 A.2d 1064, 1072 (Del.1988); *Murray v. Schwartz Motors,* 1989 WL 31554 *2 (Del.Super.Ct. March 27, 1989) (citing Prosser and Keeton, *The Law of Torts,* § 30 at 164–65 (5th ed. 1984)). Unfortunately, Naghiu has failed to marshal enough evidence to support his bare subjective assertions of negligence. Although it is clear that the hotel owed Naghiu a duty of reasonable care, Naghiu has not placed any facts into the record demonstrating a breach of that duty. He has not shown that there were prior assaults on Inter–Continental Kinshasa guests or that the hotel knew or should have known of such attacks but failed to take reasonable security precautions.[6] While the Court is sensitive to the difficulties of proof plaintiff must surmount due to distance and the passage of time, he must nevertheless surmount them to survive summary judgment. On the current record, this he has not done. Naghiu has merely relied upon his self-serving assertions, conclusory allegations and suspicions and has thus failed to establish a prima facie case of negligence. *See Gans v. Mundy,* 762 F.2d at 341. Accordingly, the Court will grant summary

---

**6.** Naghiu has made it clear that prostitutes had access to elevators and upper floor hallways of the hotel. However, there has been no showing

that this activity would have sufficed to put the hotel on notice to protect against the type of

judgment in favor of defendant as to plaintiff's tort claim and his spouse's derivative loss of consortium claim.[7]

### IV. CONCLUSION

For the above reasons, the Court holds that plaintiff is not a real party in interest for purposes of his claim for loss of $146,000, property in which he had no legal interest. The Court also holds that plaintiff Leslie Naghiu has failed to establish the existence of the essential elements of his case with respect to his claim for negligence; it follows that plaintiff-spouse Laverne Naghiu's loss of consortium claim fails as well. The Court will therefore grant summary judgment in favor of defendant. An appropriate order will follow.

ambush and assault Naghiu experienced in his hotel room.

**7.** In its briefing and oral argument on plaintiff's negligence claim, Inter–Continental asserted as an affirmative defense the "fireman's rule" of assumption of the risk as applicable to Naghiu in his role as a security officer. Because of the Court's finding that plaintiff has failed to meet his summary judgment burden on the negligence claim, it is unnecessary for the Court to address the merits of this argument.